Nicholas A. Carlin (SBN 112532)
Kyle P. O'Malley (SBN 330184)
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201
The Presidio
San Francisco, CA   94129
Telephone:  415-398-0900
Fax:          415-398-0911
Email: nac@phillaw.com
       kpo@phillaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Suzanne Jackson,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Sharon Rogers McKay,<br><br>　　　　　　Defendants. | Case No. 2:22-CV-1574<br><br>**COMPLAINT FOR (1) CLAIM AND DELIVERY; (2) CONVERSION; (3) TRESPASS TO CHATTELS; (4) INTENTIONAL MISREPRESENTATION**<br><br>**JURY TRIAL DEMANDED** |

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff Suzanne Jackson alleges as follows:

**INTRODUCTION**

1. Plaintiff is a fine artist whose groundbreaking body of work in diverse mediums over five decades has earned her worldwide renown and a place among the most celebrated American artists of the 20th and 21st centuries.

2. This case is about fourteen unique and irreplaceable artworks that occupy a special place in both Plaintiff's oeuvre and in the broader cultural heritage of 20th-century American art. Specifically, it is about Plaintiff's efforts to regain possession of her art from her former trusted friend, Defendant Sharon Rogers-McKay ("Rogers"), who has failed and refused, utterly without justification, to return them to Plaintiff.

# THE PARTIES

3. Plaintiff Suzanne Jackson lives in Savannah, Georgia and is a citizen of the State of Georgia.

4. Defendant Rogers is an individual who, at all relevant times herein, lived in Los Feliz in Los Angeles, California. On information and belief, Defendant is a citizen of the State of California.

# JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over Defendant because she lives in this judicial district.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

# FACTUAL ALLEGATIONS

## Plaintiff's Background

8. Plaintiff is a successful and celebrated fine artist who has had a distinguished career exhibiting her work nationally and internationally.

9. Born in St. Louis, Missouri in 1944 (age 78), Plaintiff moved to the Bay Area to study art and ballet at San Francisco State University in 1966, where she earned a BA in painting. In 1990, Plaintiff earned an MFA from Yale School of Drama, Design.

10. In addition to various solo exhibitions and retrospectives, Plaintiff's work has featured in institutional surveys and historical exhibitions at LACMA, the Museum of Contemporary Art in Chicago, the Brooklyn Museum, and the Hammer Museum, among others.

11. Plaintiff's work also resides in or has been bequeathed to the permanent collections of the New York Museum of Modern Art, the Art Institute of Chicago, the Baltimore Museum of Art, the California African American Museum, the Getty Research Institute, and others. In 2019, Plaintiff was honored to be granted a prestigious fellowship with the Joan Mitchell Foundation.

12. From 1968 to 1970, Plaintiff ran Gallery 32, a space dedicated to fostering a supportive artist community in Los Angeles modeled after Plaintiff's previous experiences with San Francisco bohemianism. Plaintiff funded the gallery herself, largely with money she earned from teaching. Gallery 32 became an important cultural venue, hosting discussions, poetry readings, fundraisers for social causes, and exhibiting work that demonstrated strong political and civic engagement. It quickly became one of the few art spaces in Los Angeles to exhibit emerging African American artists.

13. Following the closure of Gallery 32 and throughout the 1970s and early 1980s, Plaintiff's reputation grew and her career as a visual artist continued to flourish. While living in Los Feliz and Idyllwild during this period, Plaintiff created a variety of drawings and paintings on canvas, paper, and illustration board in acrylic, oil, pencil, and mixed media. Among these are fourteen works (the "Artworks") consisting of a mixture of drawings and paintings from 1978 to 1984. (*See* **Exhibit A** attached hereto for a list identifying the Artworks.)

14. At all times since Plaintiff created them, she has owned all right, title, and interest in and to the Artworks and has had the sole and exclusive right to possess and control them. No other person or entity has any right, title, or interest in or to the Artworks. Neither Plaintiff nor any person or entity acting on her behalf has ever granted any right, title, or interest in the Artworks to anyone.

**Plaintiff's Relationship with Defendant**

15. Plaintiff first met Defendant Rogers in or about the early 1970s. During all or substantially all of the time Plaintiff has known Rogers, Rogers has lived in Los Feliz and was an interior designer. Until the events giving rise to this lawsuit came about, Plaintiff considered Rogers a close friend.

16. In or around April 1985, while Plaintiff was living in the San Francisco Bay Area, the Artworks were shipped from California to East Hampton, New York, where they were exhibited at Bologna Landi Gallery. When that exhibition ended, the Artworks were crated and returned to Plaintiff by Bologna Landi Gallery. Because Plaintiff did not have anywhere to store them at the time, Rogers agreed that Plaintiff could store the Artworks at Rogers's Los Feliz

home. Accordingly, at the conclusion of the exhibition, Bologna Landi Gallery delivered the Artworks to Plaintiff at Rogers's Los Feliz home.

17. In 1987, Plaintiff moved from California to New Haven, Connecticut to study design at Yale School of Drama. After earning her MFA in 1990 and spending some time traveling and working, in 1992 Plaintiff moved to Oakland, California.

18. In 1993, Rogers asked Plaintiff to move to back to the Los Angeles area. At the time, Rogers was a single mother and, among other things, she wanted Plaintiff nearby to help Rogers out.

19. Plaintiff agreed to relocate back to the Los Angeles area at Rogers's request, but needed to continue to store various property, including the Artworks, while Plaintiff found new accommodations. Rogers and Plaintiff therefore agreed that Plaintiff could continue to leave the Artworks in the garage of Rogers's home for storage and safekeeping.

**Plaintiff Entrusted Her Artworks to Defendant**

20. When Plaintiff left the Artworks in Rogers's garage, they were in pristine condition and stored in a sealed crate designed to prevent handling, exposure, and damage. Rogers promised and represented to Plaintiff, and Plaintiff understood and agreed, among other things, as follows:

    a. Rogers would use reasonable care to ensure the Artworks were not moved, damaged, or lost; and

    b. Rogers would return the Artworks to Plaintiff upon Plaintiff's request. The parties did not set a date by which Plaintiff must request the return of any Artwork.

21. Rogers made these representations and promises to Plaintiff orally and by nonverbal conduct.

22. Had Plaintiff known at the time that Rogers would break these promises or that she never intended to honor them, or that she made these promises or any representations knowing they were false or recklessly and without regard for their truth, Plaintiff would not have relocated to the Los Angeles area or left the Artworks with Rogers. Plaintiff relied on the

parties' long friendship, mutual understanding and agreement, and on Rogers's representations and promises, in relocating and leaving Plaintiff's Artworks with Rogers.

**Defendant Agrees to Return Plaintiff's Artworks**

23. In February 2020, Plaintiff's gallerist and representative, Ales Ortuzar, met one-on-one with Rogers at her Los Feliz home to convey Plaintiff's interest in the return of her Artworks. The Artworks were on display, along with other works Plaintiff created and Rogers has acquired over the years and owns.

24. At this meeting, Ortuzar raised and reiterated Plaintiff's ownership and rights in and to the Artworks. Ortuzar also told Rogers that she was obligated to return the Artworks to Plaintiff. Rogers did not contest or object to Ortuzar's assertions.

25. Following the February 2020 event, Ortuzar and Plaintiff spent the next two months reviewing records to identify the Artworks in preparation for their return, including gallery and Smithsonian records. Over the years, Rogers has acquired ten artworks by Plaintiff, and Plaintiff did not and does not seek the return of those works.

26. On April 9, 2020 Ortuzar emailed Rogers to provide her with a list of Artworks Plaintiff sought to have returned. Rogers did not respond to this email.

27. In or about early June 2020, an associate/consultant with Ortuzar Projects, Heather Harmon, contacted Rogers's late husband, Marshall McKay ("McKay") by text message to again request return of the Artworks.

28. Shortly thereafter, Harmon spoke with Rogers's associate and representative (a woman going by the name "Brie"), who confirmed that the Artworks would be returned to Jackson. At the time, based on their conversations with Brie and McKay, Plaintiff and her representatives understood that one of the works (a diptych entitled "Thunder and Fog") had been moved from Rogers's Los Feliz house to a house owned by McKay in Brooks, California.

29. On June 11, 2020, Brie emailed Harmon to thank her for their conversation and asked Harmon to follow up with additional details in preparation for return of the Artworks. On June 13th, Harmon replied and attached a list of the Artworks to be returned. On June 18th, Brie replied that "we've made the necessary arrangements" for all Artworks in question "to be picked

up in Los Angeles" at "one location" (i.e., that "Thunder and Fog" would be moved back to Los Angeles for pickup along with the rest of the Artworks). Brie promised to "circle back" "once they are ready for pick-up." (*See* **Exhibit B** attached hereto for correspondence between Harmon and Brie from June 11, 2020 to July 3, 2020.)

**Defendant Breaks Her Promise to Return the Artworks**

30. After making the preliminary arrangements for the pickup, however, on July 3, 2020, Brie stated that due to a surge in coronavirus cases, she and Rogers would need "guidance from our state and local officials before we make scheduling arrangements" and then abruptly ceased further communication. *See* id.

31. Despite Plaintiff's attempts to resume discussions of return of the Artworks, Rogers continued to ignore her and her representatives, including an offer in February 2021 (after the vaccine was developed) by Harmon to comply with subsequently-developed safety protocols in picking up the Artworks, as well as threats of legal action. (*See* **Exhibit C** attached hereto for the Feb. 1, 2021 offer from Harmon.)

**Value of the Artworks**

32. The Artworks had fair market values as of July 2020 ranging from at least $40,000 to $350,000 each, and as a whole, the fourteen Artworks had an aggregate fair market value of at least $1,325,000, as follows:

| No. | Title | Year(s) Created | Medium(s)/ Format | Size (inches) | Vale (as of July 2020) |
|---|---|---|---|---|---|
| 1 | *Windy Leaf* | c. 1982 | Acrylic and acrylic wash on canvas | 30 x 30 | $90,000 |
| 2 | *Waiting* | 1982-83 | Multimedia | 35 5/8 x 23 5/8 x 1 ½ | $40,000 |
| 3 | *On Your Mind* | 1980 | Acrylic on paper | 44 x 32 x 1 ¼ | $45,000 |
| 4 | *Bittersweet* | 1980 | Acrylic on canvas | 15 5/8 x 15 5/8 | $45,000 |
| 5 | *Sugar* | 1981 | Acrylic on canvas | 15 5/8 x 15 5/8 | $45,000 |
| 6 | *Twist* | 1978-84 | Oil on canvas | 35 x 35 x 2 | $65,000 |
| 7 | *Rain White* | 1981 | Acrylic on canvas | 15 5/8 x 15 5/8 | $45,000 |
| 8 | *Passing Through* | 1984 | Mixed media on paper | 35 ¾ x 23 7/8 | $45,000 |

| 9 | *Mute Gold* | 1984 | Acrylic on cold press board | 40 ¾ x 30 ¾ | $50,000 |
| --- | --- | --- | --- | --- | --- |
| 10 | *Giggolo* | 1981 | Colored pencil on illustration board | 31 ¼ x 38 ¼ | $50,000 |
| 11 | *Baby Again* | 1981 | Colored pencil on illustration board | 36 x 30 | $50,000 |
| 12 | *0-80* | 1980 | Acrylic on canvas | 15 5/8 x 15 5/8 | $55,000 |
| 13 | *Crocus* | c. 1980s | Acrylic on canvas | 84 x 48 | $350,000 |
| 14 | *Thunder and Fog* | 1981 | Shaped diptych | 32 ½ x 50 (each) | $350,000 |

33. The fair market value of the Artworks alleged herein is based on four comparable works Plaintiff sold to private buyers and institutions between 2020 and 2021. Those works sold for $126,000 (Oct. 2020); $160,000 (Nov. 2020); $335,000 (May 2021); and $76,000 (Aug. 2021). (*See* **Exhibit D** attached hereto for copies of four invoices, redacted for buyers' and Plaintiff's privacy.)

34. The Artworks are unique and irreplaceable and have special historical, cultural, and sentimental value, so money damages alone would never fully compensate Plaintiff for the loss of or damage to such works. They are part of Plaintiff's whole body of work as an artist, and therefore have value whether Plaintiff keeps them or they are sold to collectors or sold or bequeathed to museums.

35. Plaintiff is informed and believes that, except for one period of time in or around the mid-1980s where they were exhibited at a museum in San Diego, California and at the Bologna Landi Gallery in East Hampton, New York, the Artworks have never been displayed or exhibited to the public. This rarity generally increases their value.

36. Because Rogers has refused to return the Artworks to Plaintiff, she was unable to photograph them for inclusion in a monograph in early 2021.

37. Unless they are returned to Plaintiff, she will be unable to sell any of the Artworks or include them in any of the multiple retrospectives of her work presently scheduled through 2024.

# CLAIMS

## FIRST CLAIM FOR RELIEF

**(Claim and Delivery/Specific Recovery,**

**Cal. Civ. Code § 3379, Cal. Code Civ. P. § 511.010 *et seq.*)**

38. Plaintiff incorporates by reference all the foregoing allegations.

39. The Artworks identified herein are Plaintiff's personal property.

40. Plaintiff is entitled to immediate possession of the Artworks.

41. Defendant is not the owner of the Artworks and has no right to possession or control of the Artworks.

42. Defendant has failed and refused, in bad faith, to return the Artworks to Plaintiff, despite Plaintiffs' demand for their return.

43. Pursuant to, *inter alia*, California Civil Code §§ 3379-3380, California Code of Civil Procedure § 512.010 *et seq.*, Plaintiff is entitled to injunctive relief and a writ of possession to recover immediate possession of the Artworks from Defendant and to an order compelling Defendant to specifically deliver the Artworks to Plaintiff.

44. Defendant's conduct was willful, intentional, malicious, fraudulent, oppressive, and in conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to punitive and exemplary damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

**(Conversion)**

45. Plaintiff incorporates by reference all the foregoing allegations.

46. At all times, Plaintiff owned and had a right to possess the Artworks.

47. Defendant substantially interfered with Plaintiff's property by knowingly or intentionally taking possession of the Artworks, preventing Plaintiff from having access to the Artworks, and/or failing and refusing to return the Artworks to Plaintiff after Plaintiff demanded their return.

48. Plaintiff did not consent to this conduct.

49. Plaintiff was harmed and Defendant's conduct was a substantial factor in causing Plaintiff's harm.

50. Defendant's wrongful conduct Plaintiff constitutes conversion.

51. As a legal and proximate result of Defendant's conversion, Plaintiff has suffered economic damages in an amount to be proven at trial, but at least $1,325,000 (including but not limited to (a) the fair market value of the Artworks at the time of the conversion plus interest to the present and (b) reasonable compensation for the time and expense of attempting to recover the Artworks).

52. As a legal and proximate result of Defendant's conversion, Plaintiff has suffered reasonably foreseeable special damages that would not have been prevented through reasonable care by Plaintiff, in an amount to be proven at trial.

53. As a further legal and proximate result of Defendant's conversion, Plaintiff has suffered general damages, including stress, anxiety, and severe emotional distress for which she is entitled to damages in an amount to be proven at trial.

54. Defendant's conversion was willful, intentional, malicious, fraudulent, oppressive, and in conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to punitive and exemplary damages in an amount to be proven at trial.

55. Plaintiff is entitled to injunctive relief to recover immediate possession of the Artworks from Defendant.

56. Pursuant to Cal. Prob. Code § 859, Plaintiff is entitled to double damages and reasonable attorneys' fees and costs for Defendant's bad faith, wrongful taking of the Artworks belonging to Plaintiff, who was an "elder" at all relevant times herein, including but not limited to July of 2020 through the present.

### THIRD CLAIM FOR RELIEF

**(Trespass to Chattels)**

57. Plaintiff incorporates by reference all the foregoing allegations.

58. At all times, Plaintiff owned and had a right to possess the Artworks.

59. Defendant intentionally interfered with Plaintiff's use or possession of the Artworks and/or Defendant damaged the Artworks.

60. Plaintiff did not consent to this conduct.

61. Plaintiff was harmed and Defendant's conduct was a substantial factor in causing Plaintiff's harm.

62. Defendant's wrongful conduct Plaintiff constitutes trespass to chattels.

63. As a legal and proximate result of Defendant's trespass, Plaintiff has suffered actual damages attributable to the Artworks' impairment and lost use in an amount to be proven at trial.

64. As a further legal and proximate result of Defendant's trespass, Plaintiff has suffered general damages, including stress, anxiety, and severe emotional distress for which she is entitled to damages in an amount to be proven at trial.

65. Defendant's trespass was willful, intentional, malicious, fraudulent, oppressive, and in conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to punitive and exemplary damages in an amount to be proven at trial.

66. Plaintiff is entitled to injunctive relief to recover immediate possession of the Artworks from Defendant.

67. Pursuant to Cal. Prob. Code § 859, Plaintiff is entitled to double damages and reasonable attorneys' fees and costs for Defendant's bad faith, wrongful interference with or damage to Artworks belonging to Plaintiff, who was an "elder" at all relevant times herein, including but not limited to July of 2020 through the present.

## FOURTH CLAIM FOR RELIEF

### (Intentional Misrepresentation/False Promise, Cal. Civ. Code §§ 1709, 1710)

68. Plaintiff incorporates by reference all the foregoing allegations.

69. Defendant made promises to Plaintiff that Defendant would store Plaintiff's Artworks safely and use reasonable care to ensure the Artworks were not moved, damages, or

lost and that Defendant would return the Artworks to Plaintiff within a reasonable time upon request.

70. Defendant either did not intend to perform these promises when she made them or made these promises recklessly and without regard for their truth or her intention to perform them.

71. Defendant intended that Plaintiff rely on these promises and Plaintiff did reasonably rely on them.

72. Defendant did not perform the promised conduct and Plaintiff was harmed.

73. Plaintiff's reliance on Defendant's promises was a substantial factor in causing Plaintiff's harm.

74. As a legal and proximate result of Defendant's misrepresentations, Plaintiff has suffered economic damages in an amount to be proven at trial.

75. As a further legal and proximate result of Defendant's misrepresentations, Plaintiff has suffered general damages, including stress, anxiety, and severe emotional distress for which she is entitled to damages in an amount to be proven at trial.

76. Defendant's conduct was willful, intentional, malicious, fraudulent, oppressive, and in conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to punitive and exemplary damages in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

77. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all claims asserted in this complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Preliminary and permanent injunctive relief in the form of an Order requiring Defendant to:

   a. Immediately cease and refrain from handling or moving the Artworks identified on Exhibit A hereto in any manner whatsoever, unless handling or

moving the Artworks is necessary to prevent damage or, if already damaged, to prevent further damage.

    b.    Immediately return Plaintiff's Artworks either:

        i.    Using a shipping company, of Plaintiff's choosing and paid for at Plaintiff's expense, which together with its agents will be given access to the Artworks at the place where the Artworks are being stored, to wit, 2220 N. Catalina Street, Los Angeles, CA 90027, and an adequate opportunity to investigate them and document their condition, and that such company and/or its agents, along with any individuals required to assist in examining, documenting, packaging, and moving the Artworks shall be permitted to do so by reasonably accessing any portion of the property located at 2220 N. Catalina Street, Los Angeles, CA 90027 in which any Artwork is located; or

        ii.    By returning the Artworks to Plaintiff's attorney and/or other designated agent at the place where the Artworks are being stored, to wit, 2220 N. Catalina Street, Los Angeles, CA 90027, provided that Plaintiff's attorney or other designated agent will be given access to the Artworks and an adequate opportunity to investigate them and document their condition and that such attorney or designated agent, along with any individuals required by him or her to assist in examining, documenting, packaging, and moving the Artworks shall be permitted to do so;

2. Economic damages in an amount to be proven at trial, but at least $1,325,000;

3. General damages in an amount to be proven at trial;

4. Punitive damages in an amount to be proven at trial;

5. Double economic damages, attorneys' fees, and costs of suit pursuant to Cal. Prob. Code § 859;

6. Prejudgment interest at the maximum rate allowable by law; and

7. Such other and further relief as this Court may deem just and proper.

Dated: March 9, 2022						PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


							By  /s/ Nicholas A. Carlin
								Nicholas A. Carlin
								Kyle P. O'Malley
								Attorneys for Plaintiff