UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:22-CV-1574-CAS (PVCx) | Date | APRIL 4, 2022 |
|---|---|---|---|
| Title | SUZANNE JACKSON V. SHARON ROGERS MCKAY | | |

Present: The Honorable   CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Nicholas Carlin
Kyle O'Malley

Attorneys Present for Defendants:
Irene Scholl-Tatevosyan
Thaddeus Stauber

**Proceedings:** EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE (Dkt. 9, filed on MARCH 9, 2022)

## I.   INTRODUCTION

On March 9, 2022, plaintiff Suzanne Jackson, an artist, filed the instant action against defendant Sharon Rogers McKay ("Rogers"). See Dkt. 1 ("Compl"). This case centers around Jackson's efforts to gain possession of fourteen pieces of artwork she produced ("the Artworks") from defendant Rogers. Jackson alleges Rogers has refused to return the Artworks.[1] Jackson's complaint alleges the following claims for relief: (1) Specific Recovery under Cal. Civ. Code § 3379, Cal. Code Civ. P. § 511.010, (2) Conversion, (3) Trespass to Chattels, and (4) Intentional Misrepresentation under Cal. Civ. Code §§ 1709, 1710. Id. at 6-10.

On March 9, 2022, Jackson filed an application for a temporary restraining order and for an order to show cause re preliminary injunction pursuant to Fed. R. Civ. P. ("Rule") 65. Dkt. 9 ("TRO"). Jackson asks the Court to require Rogers to immediately relinquish possession of Jackson's artwork. Id. at 2. On March 9, 2022, the Court ordered Jackson's counsel to serve the application for the TRO to defendant and file proof of service. Dkt. 10.

---

[1] During the April 4, 2022 hearing, counsel for plaintiff acknowledged that defendant had a receipt for one of the fourteen pieces of artwork in dispute. Therefore, plaintiff now claims ownership of thirteen paintings currently in defendant's possession.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL   'O'**

| Case No. | 2:22-CV-1574-CAS (PVCx) | Date | APRIL 4, 2022 |
|---|---|---|---|
| Title | SUZANNE JACKSON V. SHARON ROGERS MCKAY | | |

On March 23, 2022, the parties filed a stipulation, agreeing that (1) March 22, 2022, will constitute the date of service of the complaint and summons, and (2) the time to respond to the complaint is extended to May 6, 2022. Dkt. 13.

On March 25, 2022, the Court continued the hearing on plaintiff's application for a TRO to April 4, 2022. Dkt. 16. On April 1, 2022, defendant filed an opposition. Dkt. 17 ("Opp.").

On April 4, 2022, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

Plaintiff Suzanne Jackson is an artist who has had a five-decade career as a painter. TRO at 2. Defendant Sharon Rogers McKay is a professional interior designer who serves on the Board of Trustees for the Autry Museum of the American West in Los Angeles. Opp. at 2. In the early 1970s, Jackson met Rogers, and the two became close friends. Id. Between 1978 and 1984, Jackson created a variety of drawings and paintings on canvas, paper, and illustration board, including the fourteen works at issue here. TRO at 2. Both parties claim ownership to the Artworks. TRO at 2; Opp. at 2.

Jackson states that she is the rightful owner of the Artworks. TRO at 2. Jackson explains that in or around 1985, while Jackson was living in San Francisco, the Artworks were shipped to East Hampton, New York, for a gallery exhibition. Jackson Decl. ¶ 9. When that exhibition ended, the gallery crated the artworks and delivered them to Jackson, but because Jackson did not have space to store them, Rogers agreed that Jackson could store the Artworks at Rogers's home in Los Feliz. Id. The gallery then shipped the Artworks to Rogers's address. Id. Jackson contends that when the Artworks were delivered to Rogers's home after the gallery exhibition, they were stored in sealed crates designed to prevent handling exposure or damages. Id. ¶ 13

Jackson also contends that Rogers promised Jackson that she would use reasonable care to ensure the Artworks were not moved, damaged, or lost, and that she would return the Artworks to Jackson upon Jackson's request. Id. Further, Jackson contends that in 1993, Rogers asked Jackson to relocate from Oakland to Los Angeles to help Rogers out, as Rogers was a single mother and needed assistance. Id. ¶ 10-11. Jackson states that she agreed to do so, but needed a place to continue to store the Artworks, and that Rogers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL   'O'**

| Case No. | 2:22-CV-1574-CAS (PVCx) | Date | APRIL 4, 2022 |
|---|---|---|---|
| Title | SUZANNE JACKSON V. SHARON ROGERS MCKAY | | |

agreed to leave the Artworks in the garage of Rogers's home for storage and safekeeping. Id.

Rogers contends that Jackson sold, gifted, or bartered the Artworks to Rogers between the 1970s and 1990s. Opp. at 2. Rogers states that some of the Artworks Jackson created were payment for the housing Rogers provided Jackson, among other things. Opp. at 2. Further, Rogers notes that many of the Artworks are displayed on the walls of her residence, and that Jackson has been to Rogers's residence multiple times in the 1990s, 2000s, and 2010s, but has previously raised no objections to the Artworks' display or contested ownership. Id. Rogers also states that she never made promises to Jackson that she would store the Artworks safely and use reasonable care to ensure they were not moved; however, Rogers notes that the Artworks have been maintained in good conditions. Opp. at 4.

Both parties agree that many of the Artworks are displayed and hanging on the walls of Rogers's residence. TRO at 2; Opp. at 2; Rogers Decl. ¶ 9. Rogers states that the Artworks remain displayed on her walls when not on loan to museums. Id.

In 2019, Jackson began a relationship with her current gallerist, representative, and advisor Ales Ortuzar. Ortuzar Decl. ¶ 3. In his capacity as Jackson's representative and advisor, Ortuzar attended a one-on-one meeting with Rogers at her Los Feliz home in February 2020, to convey Jackson's desire for Rogers to return the Artworks. Id. ¶ 5. Ortuzar observed many of the Artworks on display in Rogers' home at this meeting, along with various other works created by Jackson that Rogers had acquired over the years. Id. ¶ 6. During the meeting, Rogers requested the Ortuzar leave her home immediately. Opp. at 3. Over the next two months, Jackson and Ortuzar reviewed records to identify the Artworks in Rogers' possession that Jackson seeks, and to distinguish the Artworks from other pieces of Jackson's art that Rogers has legitimately acquired. TRO at 4.

On April 9, 2020, Jackson alleges that Ortuzar contacted Rogers to provide her with a list of the Artworks Jackson seeks to have returned. Ortuzar Decl. ¶ 8. Rogers did not respond to the email. Id. In or about June 2020, one of Ortzuar's associates, Heather Harmon, contacted Rogers's husband, Marshall McKay, to request return of the Artworks. Harmon Decl. ¶ 4. Harmon then spoke with one of Rogers's associate. Id. ¶ 5. Jackson contends that Harmon confirmed that the Artworks would be returned. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL   'O'**

| Case No. | 2:22-CV-1574-CAS (PVCx) | Date | APRIL 4, 2022 |
|---|---|---|---|
| Title | SUZANNE JACKSON V. SHARON ROGERS MCKAY | | |

On July 11, 2020, Rogers's associate emailed Harmon with details in preparation for the return of the Artworks. Id. ¶ 6. Harmon attached a list of the Artworks to be returned, and Jackson alleges that Rogers's assistant replied confirming the arrangements for the Artworks to be picked up in Los Angeles. TRO at 3. Rogers claims no such promise was made. Opp. at 4.

After making the preliminary arrangements for pickup, however, on July 3, 2020, Rogers's associate stated that due to a surge in COVID-19 cases and the death of Rogers' late husband due to COVID-19, she and Rogers needed guidance before scheduling meetings and ceased further communications. Harmon Decl. ¶¶ 6-7.; Opp. at 4. At this time, both parties are collecting evidence to support their ownership of the Artworks. TRO; Opp. at 4.

### III.   LEGAL STANDARD

The purpose of a temporary restraining order is to "preserve the status quo pending hearing on the moving party's application for a preliminary injunction." William A. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial § 13:11 (The Rutter Group 2002) (citing Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974)). The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co., 240 F.3d 832, 839 & n.7 (9th Cir. 2001).

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). Therefore, a district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." Id. at 22. Such a showing requires that the plaintiff establish that he "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20; see Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009); see also Johnson v. Couturier, 572 F.3d 1067, 1081 (9th Cir. 2009); Am. Trucking Ass'ns Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:22-CV-1574-CAS (PVCx) | Date | APRIL 4, 2022 |
|---|---|---|---|
| Title | SUZANNE JACKSON V. SHARON ROGERS MCKAY | | |

632 F.3d 1127, 1132 (9th Cir. 2011) (interpreting Winter). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

A plaintiff seeking a preliminary injunction must show more than the "possibility" of irreparable injury; he must demonstrate that irreparable injury is "likely" in the absence of preliminary relief. Winter, 555 U.S. at 22; Am. Trucking, 559 F.3d at 1052. It is not enough that the claimed harm be irreparable—it also must be imminent. Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). Conclusory affidavits are insufficient to demonstrate irreparable harm. Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985).

If a plaintiff seeks mandatory injunctive relief rather than the maintenance of the status quo, the Court must find that the facts and law "clearly favor" plaintiff on the merits analysis. Katie A., ext rel. Ludin v. Los Angeles Cnty., 481 F.3d 1150, 1156 (9th Cir. 2007).

### IV.   DISCUSSION

Jackson argues that she is entitled to a temporary restraining order and an order to show cause as to why a preliminary injunction should not issue. TRO at 6. Jackson argues that she is likely to succeed on the merits of her claim, and that she will suffer irreparable harm if a TRO is not issued. First, Jackson contends that she is likely to prevail on her claims of (1) conversion, (2) trespass to chattels, and (3) intentional misrepresentation/ false promise. Id.

All of plaintiff's claims rest on the assumption that "it is undisputed that the works at issue belong to [Jackson]." TRO at 6. However, based on the current record, there is insufficient evidence for the Court to determine plaintiffs' likelihood of success on the merits. There remain multiple factual disputes over the ownership of the Artworks—Jackson claims she is entitled to the Artworks she created and Rogers states that she received the Artworks as payment over the years—and both parties are still in the process of acquiring evidence to prove ownership. Accordingly, at this time, plaintiff has not made a sufficient showing that the facts weighs clearly in her favor. See, e.g., Katie A., ext rel. Ludin, 481 F.3d at 1156 (noting that if a plaintiff seeks mandatory injunctive relief, the Court must find that the facts and law "clearly favor" plaintiff on the merits analysis).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL  'O'**

| Case No. | 2:22-CV-1574-CAS (PVCx) | Date | APRIL 4, 2022 |
|---|---|---|---|
| Title | SUZANNE JACKSON V. SHARON ROGERS MCKAY | | |

Next, Jackson argues she will be irreparably harmed if the Court does not grant her application for a Temporary Restraining Order. TRO at 8. Jackson notes that the Artworks are unique and irreplaceable and have historical, sentimental, and cultural value, so money damages would never adequately compensate her for the loss of, or damage to, such works. Id. Further, Jackson argues the harm is imminent because without a TRO, Jackson is unable to include the Artworks in various ongoing projects, including many retrospectives celebrating her career currently scheduled through 2024. TRO at 9. Further, Jackson notes that because of Rogers's refusal to return the Artworks, Jackson is under immediate threatened injury, as the Artworks could be completely disposed of or destroyed by defendant. Id.

Rogers responds that Jackson cannot show that irreparable injury is likely absent an injunction. First, Rogers notes that Jackson delayed seeking relief for over 30 years. Opp. at 6. Jackson further points out that the Artworks have remained at Rogers's residence since 1985, and during this time Jackson has visited Rogers's residence and viewed the Artworks. Id. Moreover, Rogers contends that the Artworks are in good condition at her house which is in a gated and safe community, and Rogers's counsel has provided Jackson's counsel with photographs of the Artworks. Id. Rogers attests that she will not sell, move, or transfer the Artworks while this action is pending. Id.

The Court finds that Jackson has not made a showing of irreparable harm. The Court acknowledges the unique and irreplaceable nature of the Artwork, which is not compensable in monetary damages. See Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 37 (2d 1995) (noting that there is "irreparable harm in the loss of a relatively unique product") (internal citations omitted). However, the Court notes that, based on the record before it, the Artworks are not at risk of imminent harm. See Caribbean Marine Servs. Co., 844 F.2d at 674 (noting that the claimed harm must not only be irreparable, but also must be imminent). The record before the Court shows that the Artworks have been maintained in good condition and are hanging on the walls of Rogers's Los Feliz residence. Rogers Decl. ¶ 9; Stauber Decl., Exs. A-B; Gutierrez Decl., Exs. A-B.

Further, the Court finds that the likelihood of damage to the Artworks is extremely low, as Rogers is a Trustee of the Autry Museum, which suggests that she possesses some appreciation for art. Rogers has stated that she is willing to consider reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL   'O'**

| Case No. | 2:22-CV-1574-CAS (PVCx) | Date | APRIL 4, 2022 |
|---|---|---|---|
| Title | SUZANNE JACKSON V. SHARON ROGERS MCKAY | | |

loans of the Artworks to museums, and as such Jackson's contentions that she will be unable to display the Artworks to the public are unsupported.

Moreover, the fact that Jackson has delayed seeking injunctive relief for 37 years, while the Artworks remained displayed in Rogers's home, weighs against a finding of immediate harm. The Court finds that Jackson's delay in seeking injunctive relief weakens her claim of irreparable injury. See, e.g., Miller for and on Behalf of N.L.R.B. v. Cal. Pac. Med. Ctr., 991 F.2d 536, 543-44 (9th Cir. 1993) (finding an eight-month delay to imply a lack of urgency); Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374, 1377 (9th Cir. 1985) (finding that delay in requesting a preliminary injunction "implies a lack of urgency and irreparable harm").

Lastly, Jackson argues that the balance of hardships favors preliminary relief because there is no dispute over who owns the Artworks, and that granting the TRO is in the public interest because returning the Artworks to Jackson will benefit the public who can access the Artworks through public display. TRO at 9. Rogers responds that there is indeed a factual dispute over ownership, and that the public interest is best served by maintaining the status quo while the parties conduct discovery and adjudicate the ownership of the Artworks. Opp. at 8-10.

The Court agrees with Rogers that there is currently a dispute over ownership here. Further, the Court notes that Jackson's application for TRO seeks a mandatory injunction. "When a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" Stanley v. Univ. of S. California, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal citations omitted). Under this heightened standard, "[m]andatory injunctions … are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1979) (internal citations omitted). The Court finds that, at this time, Jackson has not met the high mandatory injunction standard because she is unable to show that the facts clearly favor her nor that extreme damage will result absent immediate relief.

While the Court finds that Jackson has not met the burden of proving she is entitled to the extraordinary remedy of a TRO, the Court finds that because of the unique and irreplaceable nature of the Artworks, the passage of time, and the fact that both sides

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL 'O'

| Case No. | 2:22-CV-1574-CAS (PVCx) | Date | APRIL 4, 2022 |
|---|---|---|---|
| Title | SUZANNE JACKSON V. SHARON ROGERS MCKAY | | |

appear to be assembling evidence to support their claims, it is appropriate to issue an Order to Show Cause as to why a preliminary injunction should not issue, set for a hearing on June 6, 2022. Prior to the hearing, the parties are permitted to take depositions of key witnesses, not to exceed five depositions per side without Court approval.

The Court directs that Rogers's attorneys provide an inventory of the paintings she claims to own to counsel for Jackson no later than April 14, 2022. In addition, pending the hearing on the preliminary injunction, the Court orders that the Artworks may not be sold, encumbered, or moved from their current location without express approval from the Court. However, the Artworks may be made available for loan to museums that are accredited by the American Association of Museums upon 10 days' notice to the parties and the Court.

Further, the parties are directed to obtain insurance for the Artworks under a policy providing valuable articles fine arts insurance. The cost of the insurance premiums shall be divided equally between the parties. Each party will have the right to seek reimbursement of the premium costs if appropriate.

Lastly, the Court directs the parties to agree on a protocol permitting counsel for both Jackson and Rogers to visit the Artworks jointly on a regular basis, not to exceed once every two weeks, until the hearing re preliminary injunction has occurred or upon further order of Court.

### V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** plaintiff's request for a temporary restraining order and issues an **ORDER TO SHOW CAUSE** as to why a preliminary injunction should not be issued. The Court sets the hearing on the OSC for June 6, 2022, at 10:00 A.M. and will be held by Zoom. Zoom Webinar Information can be found on the Court's website, under Judge Snyder's Procedures.

IT IS SO ORDERED.

| | | 00 | : | 25 |
|---|---|---|---|---|
| | Initials of Preparer | | CMJ | |